**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

390 JUPITER, LLC, a Florida limited liability
company,

      Plaintiff

v.

TOWN OF JUNO BEACH, a municipal
corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, 390 JUPITER, LLC, a Florida limited liability company ("Plaintiff"), by and through undersigned counsel, files this Complaint and sues THE TOWN OF JUNO BEACH, a municipal corporation ("Defendant" or "Juno Beach"). In support, Plaintiff states:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff is a Florida limited liability company organized in the State of Florida which conducts business in Palm Beach County, Florida and has a principal place of business in Palm Beach County, Florida.

2.     Defendant, the Town of Juno Beach, is a municipal corporation organized and existing under the laws of the State of Florida and subject to this Court's jurisdiction.

3.     This Court has jurisdiction over the subject matter of this dispute in accordance with 28 U.S.C. §§ 1331 and 1343 because it involves causes of action arising under the United States Constitution and 42 U.S.C. § 1983.

1

4.      This court has jurisdiction over Plaintiff's remaining causes of action in accordance with 28 U.S.C. § 1367 because those claims arise from the same case and controversy as those arising under the United States Constitution and 42 U.S.C. § 1983.

5.      Venue is proper in accordance with 28 § U.S.C. 1391 because all parties reside here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here.

## SUMMARY

6.      This is an action to invalidate a local ordinance which restricts the size of rooftop "Towers" to a floor area of 225 square feet ("Tower Ordinance").

7.      The size restriction on "Towers" applies to enclosed structural features, with walls and a roof, and also "**open air…feature[s],**" the plain meaning of which conflicts with the concepts of *balcony* and *roof deck* which are not subject to any size limitation and are regularly approved in excess of 225 square feet.

8.      The three conflicting concepts – open-air features, balconies, and roof decks – all apply to scenic rooftop viewing platforms like the one Plaintiff has sought to construct at its property. As such, an express conflict exists as to whether or not Plaintiff's scenic viewing area is subject to any size limitation.

9.      There are no definitions and no other textual basis to distinguish a balcony or roof deck, which is not subject to any size restriction, from an "open air…feature" which is limited to 225 square feet.

10.      The Tower Ordinance is also circular because it authorizes the Town to calculate and regulate the *floor area* of open rooftop viewing areas like Plaintiff's when a different provision of the Code provides that *balconies* and *deck areas* must be excluded when calculating floor areas.

11.     Further adding to the confusion, the size limitation applicable under the Tower Ordinance applies differently to different kinds of features: only those features which are "an integral part of the principal structure" are subject to the Tower Ordinance's size-restriction. Neither the Tower Ordinance nor any other provision of the Code provides any explanation or guidelines to inform Town residents of how, when, or why a particular feature might be deemed "an integral part of the principal structure."

12.     The Tower Ordinance is illegal in three (3) separate respects.

13.     First, it is unconstitutionally vague. A person of ordinary intelligence cannot discern when or why a particular rooftop viewing area will be deemed a balcony or deck rather than part of a Tower; cannot determine what precisely might make an open air feature "integral" to the primary home; and cannot determine how to design his or her home so that a rooftop viewing area may exceed 225 square feet. That uncertainty results in a severe risk of discriminatory enforcement.

14.     Second, the Tower Ordinance is arbitrary and capricious because it vests the Town with the unfettered discretion to determine whether a particular scenic viewing area will be deemed a *balcony* or *deck area* (in which case no size limitation applies) rather than a "Tower" limited to 225 square feet; and also whether a particular feature will be deemed "integral" such that it falls within the size-limitation applicable to Towers.

15.     Third, the Tower ordinance is expressly pre-empted by section 163.3202(5)(a), *Fla. Stat.*, which prohibits local governments from regulating certain types of exterior features defined as "Building Design Elements" a term which includes "the style or material of roof structures." The Tower Ordinance is an impermissible regulation of Building Design Elements because it

restricts Plaintiff from installing a non-slip epoxy to the existing rooftop to make it usable as a scenic viewing area. It is therefore pre-empted by State law.

16.     Plaintiff's Complaint includes six (6) counts: Count I – Due Process (Void for Vagueness, Facial Attack); Count II – Due Process (Void for Vagueness, As Applied); Count III - - Arbitrary and Capricious (Unfettered Discretion) Facial Attack; Count IV – Arbitrary and Capricious (Unfettered Discretion) As Applied; Count V - Attorneys' Fees (42 USC §1983 and §1988); and Count VI - Preemption (Section 163.3202, *Fla. Stat*.).

## FACTS

### Background: Plaintiff's Construction Project

17.     Plaintiff is the owner of real property ("Property") located at 390 Jupiter Lane, Juno Beach, FL 33408.

18.     In early 2021, Plaintiff set out to design a home to be constructed at the Property.

19.     In early 2022, Plaintiff submitted to the Town a set of proposed construction plans and requested issuance of a construction permit.

20.     On or about December 13, 2024, after several rounds of revisions and comments from the Town Planning and Zoning staff, the Town issued a building permit, authorizing construction pursuant to a specific set of plans and specifications approved by the Town. The home approved by the Town shall be referred to as the "Approved Home."

21.     The Approved Home is a single-family residence with 4,618 square feet of air-conditioned space.

22.     The Approved Home has 2 stories of air conditioned living space.

23.     The Approved Home has a flat poured concrete roof above the second story.

24.     Critical to this litigation, the Approved Home has a tower, approved by the Town,

4

located on top of the second story roof.

25.     The approved tower is a roof-covered, air-conditioned space which essentially serves as a limited-purpose third floor. The Tower has a door which allows a person to exit out onto the rooftop and view the ocean from behind a guardrail.

26.     Shortly after the building permit was issued, Plaintiff commenced construction of the Approved Home.

27.     Approximately five (5) months later, after construction was substantially underway, Plaintiff submitted to the Town an application for a revised construction permit.

**28.**     The application sought to make a single revision to the Approved Home by applying a non-slip epoxy material to the already-approved (and already-constructed) concrete rooftop. See **Exhibit A.**

29.     The proposed change would allow the rooftop to be used as a scenic viewing area accessible from the already-approved Tower.

30.     In common parlance, Plaintiff's rooftop viewing area is aptly described as a *roof deck* or a *balcony*.

31.     No provision of the Town Code restricts, limits, or otherwise regulates the size of roof decks or balconies.

32.     **Quite the contrary, the Town Code expressly states that *deck areas* and *balconies* are excluded when calculating floor areas under the Town Code**, providing the following provision:

> For the purposes of this Chapter, the following terms and words are hereby defined.
> …
> *Floor area, total*, means the sum of the gross horizontal area of all of the floors of a building measured from the exterior faces of exterior walls and/or supporting columns. Such areas **shall exclude** a basement or subbasement as defined; open plaza, **balcony** or **deck areas**; and off-street parking within or under the building.

5

Section 34-4, Municipal Code of the Town of Juno Beach (emphasis added).

33.     In all respects, Plaintiff's application was consistent with the requirements of the Florida Building Code, including relocating the approved handrail to encircle the entire area.

34.     The Town denied Plaintiff's application.

**The Text of the Tower Ordinance**

35.     In denying Plaintiff's proposed rooftop viewing area, the Town relied on section 34-268 of the Municipal Code, which regulates the size of "Towers."

36.     Section 34-268 and the incorporated definition of "Tower," set forth separately in section 34-4, shall be referred to as the "Tower Ordinance."

37.     Section 34-268 governing Towers appears in table format within the Code and is reproduced in full as **Exhibit B** hereto.

38.     Section 34-268 provides that rooftop towers are limited to 225 square feet of floor area.  *See* Ex. A.

39.     The incorporated definition within section 34-4 then defines "Tower" as follows:

*Tower* means an **open air** or enclosed structural feature which is an **integral part of the principal structure**, and whose **floor area**, from outside wall to outside wall, is limited in size. Such structural feature is intended to provide additional scenic viewing opportunities.

40.     Asserting the proposed rooftop area was an "open air…feature which is an integral part of the principal structure," the Town concluded it fell within the definition of "Tower."

41.     Because it exceeded 225 square feet when combined with the Tower already approved as a part of the Approved Home, the Town concluded it violated the Tower Ordinance.

42.     Otherwise stated, the Town asserted Plaintiff's rooftop deck was too big.

43.     The Town's letter denying Plaintiff's proposed change is attached as **Exhibit C.**

**Three Separate Defects Exist in the Text of the Tower Ordinance**

44.     The Tower ordinance contains three (3) separate textual defects.

***First Defect: Conflict With the Terms "Balcony" and "Deck"***

45.     The term "open air feature" is not defined in the Tower Ordinance or elsewhere in the Code and its plain meaning is indistinguishable from the terms "balcony" and "deck."

46.     *Balconies* and *decks* are both recognized throughout the Code, are not subject to any size limitation, and are regularly approved in excess of 225 square feet. *See* ¶¶ 70-88 *infra.*

47.     The term "Balcony" is used at least 12 different times throughout the Code while the term "Deck" is used at least 10 different times.

48.     Merriam Webster's Thesaurus describes the term "Deck" as follows:

"Deck, noun
as in *balcony*
A flat roofless structure attached to a building.
Synonyms and similar words: balcony, porch, terrace, verandah, sundeck, veranda, stoop, gallery, lanai."

49.     Merriam Webster's Thesaurus separately describes the term "Balcony" as follows:

"Balcony, noun
as in *deck*
A flat roofless structure attached to a building.
Synonyms and similar words: deck, terrace, porch, verandah, sundeck, veranda, gallery, stoop, lanai."

50.     Plaintiff's proposed scenic viewing area meets the plain English definition of "Balcony" and also the plain English definition of "Deck" and therefore is not subject to any size limitation.

***Second Defect: Circularity in the Ordinance***

51.     Second, the Tower Ordinance is circular because it conflicts with the separately-defined concept of *Floor area* located in section 34-4.

52.     As set forth in paragraph 39 above, the Tower Ordinance explicitly incorporates the term "floor area," calling for *open air features* to be counted when calculating floor areas, i.e. open air features are counted in determining whether a Tower exceeds 225 square feet.

53.     However, pursuant to the definition of *floor area*, any calculation of *floor areas* under the Code must exclude *balconies* and *deck areas*. *See* ¶ 32, *supra*.

54.     The result is an explicit conflict between the terms: the Tower Ordinance incorporates a defined term, "floor area," which disclaims that the very feature in question – a scenic viewing area accurately characterized as a deck or balcony – should be totally excluded from any floor area calculations.

55.     Stated even more simply, *there is no way to measure the floor area of a feature which by definition is not counted when calculating floor areas.*

56.     A person of ordinary intelligence has no way of determining which part of the conflicting provision really governs: the part that says these sorts of features are limited to 225 square feet of floor area; or the part that says these sorts of features are not counted in floor area calculations.

57.     A person of ordinary intelligence has no way of reconciling the circularity of the provisions in question.

**Third Defect: Ambiguity in the Ordinance**

58.     Third, the definition of "Tower" only applies to open air features when they are "an integral part of the principal structure…" *See* ¶ 39, *supra*.

59.     However, the Tower Ordinance does not provide any basis to distinguish when a particular open-air feature is *integral* and when it is not.

60.     Indeed, Plaintiff's proposed viewing area has no roof, plumbing, air conditioning, walls, or windows which would logically make it *integral* to the already-approved structure in any

8

common English sense.

61.     In pertinent part, Merriam Webster's Thesaurus defines "integral" as follows:

"Integral, adjective
…
Essential to completeness…Lacking nothing essential: Entire"

62.     The Town alone possesses the power and discretion to determine which open-air features are *an integral part* of the principal structure, i.e. which are *essential to the completeness* of the home.

63.     The Tower standard, and the Code as a whole, fails to provide any basis to distinguish which open air features are *integral*, which are not, or why any particular open-air feature might be deemed integral.

***The Defects in the Tower Ordinance Leave Town Residents in Limbo***

64.     There is no way for a person of ordinary intelligence to distinguish balconies and deck areas from those open-air features that fall within the definition of "Tower."

65.     There is no way for a person of ordinary intelligence to design his or her home to ensure all scenic viewing areas meet the parameters of a *balcony or deck area* rather than a *Tower*.

66.     The Town alone possesses the power and discretion to distinguish between balconies, deck areas, and open-air features.

67.     There is also no way for a person of ordinary intelligence to understand when an open air feature is integral to the primary structure, or to design his or her home to ensure the open-air feature is not integral and therefore not subject to any size limitation.

68.     There is no way for a person of ordinary intelligence to design a home so the scenic viewing areas are not *integral to the principal structure*.

69.     In sum, there is no way for a person of ordinary intelligence to determine when and

9

under what circumstances he or she is permitted to build a scenic viewing area in excess of 225 square feet.

**The Result: Subjective and Ad Hoc Decision-Making by the Town**

70.     The glaring deficiencies in the Tower Ordinance vest the Town with the unfettered discretion to make decisions on an ad hoc basis unconstrained by any objective standards.

71.     A risk of discriminatory enforcement exists as a result.

72.     The danger of discriminatory enforcement is illustrated by the arbitrary and capricious manner in which the Town has attempted to reconcile the textual defects to date.

73.     At 401 N. Juno Lane, Juno Beach, FL 33408, the Town has approved a scenic rooftop viewing area measuring approximately 486 square feet.  See **Exhibit D.**

74.     The feature in question lies upon a rooftop and constitutes an *open-air feature*, as used within the Tower definition, in any ordinary sense of the term.

75.     Nevertheless, without any textual basis for support, the Town approved the feature as a "balcony" and permitted it to exceed 225 total square feet.

76.     In a second instance, at 844 Ocean Side Drive, Juno Beach, FL 33408, the Town approved a scenic rooftop viewing area measuring 913 square feet.  See **Exhibit E**.

77.     The feature in question lies upon the rooftop and constitutes an *open-air feature*, as used within the Tower definition, in any common English sense.

78.     Nevertheless, without any textual basis for support, the Town approved the feature as a "roof deck" and permitted it to exceed 225 total square feet.

79.     Separately at 884 Ocean Side Drive, the Town also approved an additional outdoor viewing area measuring 245 square feet.  See **Ex. E.**

80.     Even though that feature is an *open air feature* as referenced within the Tower

definition, the Town approved it as an "Ocean Terrace" and therefore permitted it to exceed 225 square feet. *Id.*

81.     The term "Ocean Terrace" is not defined in the Code and not used anywhere in the Code.

82.     Merriam Webster's Thesaurus states that a "Terrace" is a synonym for a balcony or a deck.

83.     In a third instance, at 461 N. Juno Lane, Juno Beach, FL 33408, the Town approved a scenic rooftop viewing area measuring approximately 688 square feet. See **Composite Exhibit F.**

84.     That feature meets the plain meaning of the term "open air feature," as referenced in the Tower definition; nevertheless, the Town construed it as a "Loggia" and did not subject it to the size limitation applicable to open air features in a Tower.

85.     The term "Loggia" is not defined in the Code and not used a single time throughout the entire Town Code.

86.     There is no basis in the Code to distinguish the Town's treatment of the various rooftop viewing features discussed herein: balconies, deck areas, open air features within a "Tower", loggias, and ocean terraces.

87.     It is totally unsupportable for the Town to defend the text of an ordinance so totally lacking in specificity that its enforcement is on an ad hoc and totally subjective basis.

88.     Town residents are entitled to be treated fairly and equally to one another under the Tower Ordinance, rather than arbitrarily and capriciously.

**In its Attempt to Defend the Flawed Tower Ordinance, the Town Has Asserted Without Any Textual Support that the Definition of Tower Varies by Zoning District**

89.     In its attempt to reconcile the express conflicts within the Code as set forth above, the Town has asserted without textual support that the Tower Ordinance allows different size

rooftop viewing areas in different *zoning districts*. In an email from the Town's Director of Planning and Zoning, the Town explained that open air features have been "consistently limited to a maximum of 225 square feet **in the RS [residential] zoning districts**." See **Exhibit G** (emphasis added).

90.     There is no support in the Code for the Town's construction of the Tower Ordinance to distinguish as between zoning districts.

91.     Moreover, the Town's excuse is patently false: as noted in paragraphs 70-88 above, rooftop viewing areas have regularly been allowed to exceed 225 square feet when the Town has determined at its discretion that those features are either balconies, roof decks, loggias, or terraces.

92.     The Town's attempt to explain away the defects by distinguishing between different zoning districts is tantamount to the exercise of complete, unfettered discretion untethered to any basis in the plain language of the Ordinance itself.

**A Further Defect: Florida Law Pre-Empts the Tower Ordinance**

93.     The Tower Ordinance on its face regulates open air rooftop features without regard to the materials used or the specific manner in which the features are constructed.

94.     Accordingly, the Tower Ordinance on its face prohibits even the most basic applications of rooftop decking material in excess of 225 feet, including – for instance – non-slip epoxy applied to an existing concrete rooftop as Plaintiff has sought. See Ex. A.

95.     Indeed, under the plain terms of the Tower ordinance, application of a non-slip epoxy to a rooftop would make the rooftop an *open air feature* as set forth in the definition of "Tower." *See* Tower Ordinance (definition of Tower applies to "an open air **or** enclosed structural feature" (emphasis added)); see Ex. C.

96.     A local ordinance which regulates the material of rooftops is pre-empted by section

12

163.3202, *Fla. Stat.* except in limited circumstances not present here.

97.     Specifically, section 163.3202(5)(a), *Fla. Stat.*, provides that local governments are prohibited from regulating single family homes as to certain exterior features defined as "Building Design Elements":

> (5)(a) Land development regulations relating to **building design elements may not be applied** to a single-family or two-family dwelling unless:
> 1.  The dwelling is listed in the National Register of Historic Places, as defined in s. 267.021(5); is located in a National Register Historic District; or is designated as a historic property or located in a historic district, under the terms of a local preservation ordinance;
> 2.  The regulations are adopted in order to implement the National Flood Insurance Program;
> 3.  The regulations are adopted pursuant to and in compliance with chapter 553;
> 4.  The dwelling is located in a community redevelopment area, as defined in s. 163.340(10);
> 5.  The regulations are required to ensure protection of coastal wildlife in compliance with s. 161.052, s. 161.053, s. 161.0531, s. 161.085, s. 161.163, or chapter 373;
> 6.  The dwelling is located in a planned unit development or master planned community created pursuant to a local ordinance, resolution, or other final action approved by the local governing body before July 1, 2023; or
> 7.  The dwelling is located within the jurisdiction of a local government that has a design review board or an architectural review board created before January 1, 2020.

(emphasis added).

98.     Section 163.3203(5)(b) defines the term "Building design element" as follows:

> "Building design elements" means the external building color; the type or style of exterior cladding material; **the style or material of roof structures** or porches; the exterior nonstructural architectural ornamentation; the location or architectural styling of windows or doors; the location or orientation of the garage; the number and type of rooms; and the interior layout of rooms. The term does not include the height, bulk, orientation, or location of a dwelling on a zoning lot; or the use of buffering or screening to minimize potential adverse physical or visual impacts or to protect the privacy of neighbors.

(emphasis added).

99.     Plaintiff's proposed change - application of a non-slip epoxy material to the already-

approved concrete roof – meets the definition of "Building Design Element" because it involves the style and material of the roof.

100. Plaintiff did not propose to expand the air-conditioned space of the Home; or increase the height of the Home already approved by the Town; or make any change to plumbing, electric, or the concrete roof itself; or change the height, bulk, orientation or location of the Home.

101. Plaintiff's proposed change was limited exclusively to the application of a non-slip epoxy to the top of an already-approved roof.

102. Plaintiff's request was compliant with the Florida Building Code in all respects.

103. None of the exceptions enumerated in §163.3202(5)(a) apply here.

104. In sum, the Town is pre-empted from regulating or otherwise denying Plaintiff's proposed change.

### Attorneys' Fees, Conditions Precedent, and Miscellaneous Allegations

105. This Court has the power to enter declaratory judgments and to enjoin the operation of the Tower Ordinance in accordance with 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

106. As to the counts alleging violation of the United States Constitution, attorneys' fees and costs are recoverable in accordance with 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

107. As to all counts, attorneys' fees and costs are recoverable in accordance with section 57.112, *Fla. Stat.*

108. In compliance with section 86.091, *Fla. Stat.*, this Complaint is being served on Florida's Attorney General.

109. All conditions precedent to the filing of this action have occurred, been waived or are otherwise satisfied.

### COUNT I – DUE PROCESS – VOID FOR VAGUENESS (FACIAL ATTACK)

14

110.     Plaintiff repeats and re-alleges paragraphs 1-92 and 105-109.

111.     This count seeks to invalidate the Tower Ordinance because it is unconstitutionally vague on its face.

112.     The terms of the Ordinance are insufficiently definite to inform a person of ordinary intelligence what is prohibited, *i.e.*, what kinds of rooftop viewing areas are permitted to exceed 225 square feet.

113.     There is no basis in the Code to allow a person of ordinary intelligence to distinguish balconies and deck areas, which are excluded from floor area calculations, from open air features which are part of a "Tower" and, thus, limited to 225 square feet.

114.     There is no basis in the Code to allow a person of ordinary intelligence to determine when a scenic rooftop viewing area is "an integral part of the principal structure" such that the Tower standard applies.

115.     There is no basis in the Code to allow a property owner of ordinary intelligence to design a home with balconies and deck areas, instead of an open-air Tower, such that it may exceed the 225 square foot size limitation.

116.     There is no basis in the Code to allow a property owner of ordinary intelligence to design a home with an open-air feature *not integral to the primary structure*, such that it may exceed 225 square feet.

117.     A person of ordinary intelligence cannot ascertain how to conform his or her conduct to the requirements of the Ordinance to enable him or her to comply with the Code by designing scenic outdoor viewing areas which may permissibly exceed 225 square feet.

118.     The Tower Ordinance permits arbitrary, capricious, discriminatory, and discretionary enforcement because it empowers the Town to decide on an ad hoc basis when and for whom an outdoor viewing area will be allowed to exceed 225 total square feet.

119.     In an attempt to understand and comply with the Code, Plaintiff has attempted to work with the Town to determine some objective, governing standard, but to no avail.

WHEREFORE, Plaintiff requests this Court enter a declaratory judgment in favor of Plaintiff and against Defendant deeming the Tower Ordinance void for vagueness, permanently enjoining its enforcement, awarding attorneys' fees and costs, and granting any other and further relief the Court deems appropriate.

### COUNT II – DUE PROCESS - VOID FOR VAGUENESS (AS APPLIED)

120.     Plaintiff repeats and re-alleges paragraphs 1-92 and 105-109.

121.     This count seeks to invalidate the Tower Ordinance because it is unconstitutionally vague as applied.

122.     There is no basis in the text of the law, and no other legitimate basis, to explain or justify the Town's different treatment of varying rooftop viewing areas as balconies, deck areas, Towers, loggias, and ocean terraces, respectively.

123.     There is no basis in the text of the law to justify the Town's decision to allow or disallow a rooftop viewing area in excess of 225 square feet at various properties throughout the Town.

124.     The Town's application of the Ordinance is without any objective basis in the Code and insufficiently definite to inform a person of ordinary intelligence what is prohibited, *i.e.*, what kinds of rooftop viewing areas are permitted to exceed 225 square feet.

125.    As applied to Plaintiff, there is no basis in the Code to allow a person of ordinary intelligence to distinguish balconies and deck areas, which are excluded from floor area calculations, from open air features which are part of a "Tower" and, thus, limited to 225 square feet.

126.    As applied to Plaintiff, there is no basis in the Code to allow a person of ordinary intelligence to determine when a scenic rooftop viewing area is "an integral part of the principal structure" such that the Tower standard applies.

127.    As applied to Plaintiff, there is no basis in the Code to allow a property owner of ordinary intelligence to design a home with balconies and deck areas, instead of an open-air Tower, such that it may exceed the 225 square foot size limitation.

128.    As applied to Plaintiff, there is no basis in the Code to allow a property owner of ordinary intelligence to design a home with an open-air feature *not integral to the primary structure*, such that it may exceed 225 square feet.

129.    A person of ordinary intelligence cannot ascertain how to conform his or her conduct to the requirements of the Ordinance to enable him or her to comply with the Code by designing scenic outdoor viewing areas which may permissibly exceed 225 square feet.

130.    The Town's enforcement of the Tower Ordinance is arbitrary, capricious, discriminatory, and discretionary and the Town ultimately decides on an ad hoc basis when and for whom an outdoor viewing area will be allowed to exceed 225 total square feet.

131.    In an attempt to understand and comply with the Code, Plaintiff has attempted to work with the Town to determine some objective, governing standard, but to no avail.

WHEREFORE, Plaintiff requests this Court enter a declaratory judgment in favor of Plaintiff and against Defendant deeming the Tower Ordinance void for vagueness, permanently

enjoining its enforcement, awarding attorneys' fees and costs, and granting any other and further relief the Court deems appropriate.

### COUNT III – SUBSTANTIVE DUE PROCESS – ARBITRARY AND CAPRICIOUS AS DRAFTED

132.    Plaintiff repeats and re-alleges paragraphs 1-92 and 105-109.

133.    This count seeks to invalidate the Tower Ordinance because it violates Plaintiff's Substantive Due Process rights under the Fourteenth Amendment to the United States Constitution.

134.    A party's substantive due process rights protect against the mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare in its proper sense.

135.    An ordinance which vests the government with unbridled discretion is arbitrary, capricious, and violates Due Process.

136.    It is the mere *potential* for arbitrary, capricious, and discretionary enforcement which renders a law violative of Due Process.

137.    As set forth above, the Tower Ordinance is arbitrary and capricious as drafted because it vests the Town with unbridled discretion to decide on a case-by-case basis, and unconstrained by any objective or fairly-applicable standard, which outdoor scenic rooftop viewing areas are balconies and deck areas, and which are part of a Tower.

138.    The Ordinance is also arbitrary and capricious as drafted because it vests the Town with unbridled discretion to decide on a case-by-case basis and unconstrained by any objective or fairly applicable standard, which outdoor scenic viewing platforms are *integral to the principal structure* and which are not.

WHEREFORE, Plaintiff requests this Court enter a declaratory judgment in favor of Plaintiff and against Defendant deeming the Tower Ordinance unconstitutional, permanently

enjoining its enforcement, awarding Plaintiff its attorneys' fees and costs, and granting any other and further relief the Court deems appropriate.

## COUNT IV – SUBSTANTIVE DUE PROCESS – ARBITRARY AND CAPRICIOUS AS APPLIED

139.     Plaintiff repeats and re-alleges paragraphs 1-92 and 105-109.

140.     This count seeks to invalidate the Tower Ordinance because it violates Plaintiff's Substantive Due Process rights under the Fourteenth Amendment to the United States Constitution.

141.     A party's substantive due process rights protect against the mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare in its proper sense.

142.      An ordinance which vests the government with unbridled discretion is arbitrary, capricious, and violates Due Process.

143.     It is the mere *potential* for arbitrary, capricious, and discretionary enforcement which renders a law violative of Due Process.

144.     As set forth above, the Tower Ordinance is arbitrary and capricious as applied because it vests the Town with (and the Town has exercised) unbridled discretion to decide on a case-by-case basis, and unconstrained by any objective or fairly-applicable standard, which outdoor scenic rooftop viewing areas are balconies and deck areas, and which are part of a Tower.

145.     The Ordinance is also arbitrary and capricious as applied because it vests the Town with (and the Town has exercised) unbridled discretion to decide on a case-by-case basis and unconstrained by any objective or fairly applicable standard, which outdoor scenic viewing platforms are *integral to the principal structure* and which are not.

146.     The Town's distinction between balconies, roof decks, open air features within a "Tower," loggias, and ocean terraces throughout the Town is arbitrary, capricious, and at the Town's unfettered discretion.

WHEREFORE, Plaintiff requests this Court enter a declaratory judgment in favor of Plaintiff and against Defendant deeming the Tower Ordinance unconstitutional, permanently enjoining its enforcement, awarding Plaintiff its attorneys' fees and costs, and granting any other and further relief the Court deems appropriate.

## COUNT V – ATTORNEYS' FEES - 42 U.S.C. § 1983 AND § 1988

147.     Plaintiff repeats and re-alleges paragraphs 1-92 and 105-109.

148.     This count seeks to recover attorneys' fees and costs in accordance with 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

149.     42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

150.     Included among the injuries actionable under 42 U.S.C. § 1983 is the deprivation of a party's due process rights.

151.     A claim under section 1983 exists where there has been a violation of a party's Constitutional rights as set forth herein; the government had a custom or policy that constituted deliberate indifference to those Constitutional rights; and those policies or customs caused the violation.

152.     A government custom or policy constituting indifference to Constitutional rights includes express adoption of an unconstitutional ordinance as here.

153. As set forth herein, the Tower Ordinance is arbitrary and capricious because it vests the Town with unbridled discretion to determine which rooftop scenic viewing areas are balconies, which are deck areas, and which are open air features within the scope of the Tower definition.

154. As set forth herein, the Tower Ordinance is arbitrary and capricious because it vests the Town with unbridled discretion to determine which rooftop scenic viewing areas are integral to the principal structure and which are not.

155. As set forth herein, the Tower Ordinance is arbitrary and capricious because it vests the Town with unbridled discretion to determine which rooftop scenic viewing areas are limited to 225 square feet and which are not.

156. As set forth herein, the Tower Ordinance allows for arbitrary and discriminatory enforcement because it vests the Town with the unbridled discretion to decide on a case-by-case basis, without any objective fairly-applicable governing standards, which rooftop viewing areas are limited in size and which are not.

157. As set forth herein, the Tower Ordinance is void for vagueness because it fails to inform a property-owner of ordinary intelligence what, precisely, is prohibited, *i.e.* when and under what conditions that property owner's rooftop viewing area will be limited to 225 square feet.

158. As set forth herein, the Tower Ordinance fails to provide a property-owner of ordinary intelligence with a basis to understand how, precisely to conform his or her conduct to the requirements of the law, *i.e.* how to design his or her house to ensure the rooftop viewing areas meet the definition of *balcony* or *roof area,* and are not *integral to the principal structure* such that they are not subject to a 225 square foot size limitation.

159. To the extent that Plaintiff prevails in establishing that the Town violated its Due Process rights, that violation rises to a Constitutional stature and demonstrates a deliberate

indifference to Plaintiff's Constitutional rights because the Tower Ordinance was expressly and deliberately adopted.

160.    Accordingly, the County's enactment of the Ordinance violates 42 U.S.C. § 1983, and Plaintiff is entitled to recover reasonable attorneys' fees in accordance with 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests this Court award Plaintiff the reasonable attorneys' fees and costs incurred in obtaining the relief sought herein in accordance with 42 U.S.C. § 1988 and 42 U.S.C. § 1983, and grant any other and further relief the Court deems appropriate.

## COUNT VI – PRE-EMPTION, SECTION 163.3202, FLA. STAT.

161.    Plaintiff repeats and re-alleges paragraphs 1-43 and 93-109.

162.    This cause of action seeks to invalidate the Tower Ordinance because it is pre-empted by section 163.3202, *Fla. Stat.* which prohibits local governments from regulating "building design elements" including exterior cladding and the style an material of the roof structure.

163.    Section 163.3202 provides in pertinent part that "Land development regulations relating to building design elements may not be applied to a single-family or two-family dwelling…"

164.    Section 163.3202 defines the term "building design element" to include "the style or material of roof structures."

165.    While section 163.3202 contains enumerated exceptions, none of those exceptions apply here.

166.    By its express terms, the Tower ordinance regulates open air rooftop viewing areas.

167.    By its express terms, the Tower ordinance regulates the application of non-slip epoxy to an already approved rooftop because the Tower ordinance deems such application to

convert the area in question into a part of the "tower" and therefore subject it to the size limitation contained in the Tower ordinance.

168.    The Tower Ordinance therefore regulates building design elements as prohibited by section 163.3202, Fla. Stat.

WHEREFORE, Plaintiff requests this Court enter a declaratory judgment in favor of Plaintiff and against Defendant deeming the Tower ordinance pre-empted section 163.3202, Florida Statutes; permanently enjoining its enforcement; awarding Plaintiff the reasonable attorneys' fees and costs incurred in accordance with section 57.112, Florida Statutes; and granting any other and further relief the Court deems appropriate.

Dated: August 22, 2025.

LAW OFFICE OF RICK KOZELL

*/s/ Rick Kozell*
**Rick Kozell**
Florida Bar No.: 085101
rick@kozell-law.com
cindy@kozell-law.com
616 SE Dixie Hwy.
Stuart, FL 34994
Phone (772) 287-3100
Fax (772) 266-3460
*Counsel for Plaintiff*