UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:25-cv-81053-EA

**390 Jupiter LLC,**

    Plaintiff,

v.

**Town of Juno Beach,**

    Defendant.

_____/

## ORDER DENYING PLAINTIFF'S EXPEDITED
## MOTION FOR PRELIMINARY INJUNCITON

This cause comes before the Court on the plaintiff's expedited motion for preliminary injunction [ECF No. 8]. Having held an evidentiary hearing on October 8, 2025—where the parties chose to rely on the submitted affidavits—and having carefully considered the record and the parties' arguments, the Court denies the motion because, assuming without deciding that the plaintiff proved the other elements for a preliminary injunction, the plaintiff failed to prove irreparable harm.

### Background

As alleged in the complaint, in 2022, the plaintiff submitted to the defendant a set of proposed construction plans for a home on the subject property in order to obtain a construction permit. ECF No. 1 ¶ 18-19. After revisions and comments were made, the defendant issued a building permit, authorizing construction pursuant to the specific set of plans. ECF No. 1 ¶ 20.

The approved plans allowed the home to be built as a two-story home with a flat poured concrete roof above the second story and also allowed a tower to be built on top of the second

story roof.  ECF No. 1 ¶ 21-24.  The tower would be a roof-covered, air-conditioned space serving as a limited-purpose third floor and would have a door that allows a person to exit out onto the rooftop and view the ocean from behind the guardrail.  ECF No. 1 ¶ 25.

A few months into construction, the plaintiff applied for a revised construction permit.  ECF No. 1 ¶ 27.  This application sought to make a single revision to the approved plans: applying a non-slip epoxy material to the already-approved and already-constructed concrete rooftop to convert it into a "roof deck" or "balcony."  ECF No. 1 ¶ 28-30.

The plaintiff believed that this was a permissible change under the municipal code since the code does not limit the size of a "roof deck" or "balcony."  ECF No. 1 ¶ 30-33.  But the defendant believed that this change would render the concrete roof top part of the "tower," which is limited in size under the code.  ECF No. 1 ¶ 34-43.  Accordingly, the defendant denied the plaintiff's application.  ECF No. 1 ¶ 34-43.

The plaintiff then filed this action against the defendant, alleging six causes of action: two void for vagueness claims under the Fourteenth Amendment's Due Process Clause, two arbitrary and capricious claims under the Fourteenth Amendment's Due Process Clause, an attorney's fees claim under 42 U.S.C. §§ 1983 and 1988, and a state law preemption claim.  ECF No. 1.  The plaintiff then moved for the preliminary injunction at issue here.  ECF No. 8.

## Analysis

The plaintiff argues that it is suffering irreparable harm because the harm is constitutional in nature and constitutional violations constitute *per se* irreparable harm.  ECF No. 8 at 17.  In support of this, the plaintiff primarily relies upon *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020).  ECF No. 8 at 17.

Alternatively, the plaintiff raises two other arguments as to irreparable harm: (1) because the property may be used as a family home for the plaintiff's principals, there is a personal harm that cannot be remedied with compensatory damages, and (2) even if the harm can be remedied by compensatory damages, they would be too difficult to quantify.  ECF No. 8 at 18 n.7.

The Court, however, rejects all three arguments—including *Gayle*'s reasoning—because (1) the theory of constitutional violations constituting *per se* irreparable harm is inconsistent with both the historical tradition of preliminary injunctions and the binding precedent from the Supreme Court and the Eleventh Circuit; (2) theoretical harm to the plaintiff's principals cannot properly be considered and, in any event, is too speculative to constitute irreparable harm; and (3) the potential delay in the plaintiff being able to apply the non-slip epoxy to the rooftop is not irreparable harm.

*Historical Tradition of Preliminary Injunctions*

When exercising equitable authority, a federal court may exercise only the equitable powers granted to it by Congress.  *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("A universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power.").

Congress initially granted equitable powers to the federal courts through the Judiciary Act of 1789.  *Id.* at 841 (citing § 11, 1 Stat. 78).  In doing so, Congress codified the equitable jurisdiction of the English High Court of Chancery.  *See id.*  Thus, this "statutory grant encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Id.* (quoting *Grupo Mexican de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)); *see also Payne v. Hook*, 74 U.S. 425, 430 (1869) ("The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesse[d][.]").

Under English law, the preliminary injunction was a remedy traditionally accorded to the High Court of Chancery. 3 William Blackstone, *Commentaries* *443. But the High Court of Chancery "handled private law matters . . . almost exclusively in the context of resolving property disputes" and did not have the authority "to supervise . . . administrative activity." James E. Pfander & Jacob P. Wentzel, *The Common Law Origins of Ex Parte Young*, 72 Stan. L. Rev. 1269, 1294 (2020).

As such, Congress' initial grant of equitable jurisdiction under the Judiciary Act of 1789 did not include the power to enjoin the States for constitutional violations. Congress, however, later modified the equitable jurisdiction of the federal courts through 42 U.S.C. § 1983.

Section 1983 states that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, *suit in equity*, or other proper proceeding for redress[.]" (Emphasis added).

Thus, under the plain text of § 1983, Congress authorized federal courts to exercise equitable jurisdiction over the States for violations of federal law—including constitutional violations.

But nothing in the plain language of § 1983 changes the standard required to obtain equitable relief. Thus, the relevant question is whether the High Court of Chancery would have issued a preliminary injunction based solely on the showing a constitutional violation. *See Trump*, 606 U.S. at 842 ("We must therefore ask whether universal injunctions are sufficiently 'analogous' to the relief issued 'by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act.'" (quoting *Grupo Mexicano*, 527 U.S. at 318-19)).

4

Historically, the High Court of Chancery would issue preliminary injunctions "to stay waste[] or other injuries of an equally urgent nature" rather than common law trespasses. *See* 3 William Blackstone, *Commentaries* *443 (citation modified). "Waste" referred to injuries permanent in nature because "waste" was the "spoil or destruction in houses, gardens, trees, or other corporeal hereditaments, to the disherison of him that has the remainder or reversion in fee simple or fee-tail." *See* 2 William Blackstone, *Commentaries* *281 (citation modified); *see also Waste*, Black's Law Dictionary (12th ed. 2024) (defining "waste" as "[p]ermanent harm to real property"). In contrast, "trespass" was broader than "waste" and included "any transgression or offense against the law of nature, of society, or of the country in which we live[.]" *See* 3 William Blackstone, *Commentaries* *208 (citation modified).

Accordingly, the High Court of Chancery would have required a plaintiff to prove that an alleged constitutional violation resulted in a permanent injury akin to "waste" before issuing an injunction. Thus, the mere showing of a constitutional violation is insufficient, in and of itself, for a federal court to issue a preliminary injunction.

Notwithstanding this historical tradition, *Gayle*, which the plaintiff relies on, held that "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" 614 F. Supp. 3d at 1205 (quoting *Elrond v. Burns*, 427 U.S. 347, 373 (1976)). But this holding applies *Elrond* out of its proper context.

In *Elrond*, the Supreme Court stated that "[t]he loss of *First Amendment* freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373-74 (emphasis added).

But, contrary to *Gayle*'s holding, the Supreme Court does not treat non-First Amendment constitutional violations as constituting *per se* irreparable harm. *See Fenner v. Boykin*, 271 U.S.

5

240, 243 (1926) ("*Ex parte Young*, 209 U.S. 123 [(1908)], . . . established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions.  *But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate*." (emphasis added)); *see also* Anthony DiSarro, *A Farewell to Harms: Against Presuming Irreparable Injury in Constitutional Litigation*, 35 Harv. J. L. & Pub. Pol'y 743, 754 (2012) ("Under the Supreme Court's equitable jurisprudence, where the plaintiff's claim is grounded in the Constitution, as opposed to a federal statute or common law, [the plaintiff] is not relieved from having to demonstrate irreparable injury.").

Likewise, the Eleventh Circuit has recognized that not all constitutional violations constitute *per se* irreparable harm.  *See Cunningham v. Adams*, 808 F.2d 815, 821-22 (11th Cir. 1987) (rejecting the appellant's argument that a violation of the Fourteenth Amendment's Due Process Clause is *per se* irreparable harm); *see also Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 706 F. Supp. 844, 849 (S.D. Fla. 1989) (explaining that a void for vagueness claim arising under the Fourteenth Amendment's Due Process Clause is not *per se* irreparable harm).

Therefore, contrary to the plaintiff's argument, its claims arising under the Fourteenth Amendment's Due Process Clause do not constitute *per se* irreparable harm.

### *Harm to the Plaintiff's Principals*

Alternatively, the plaintiff argues that if a constitutional violation is not *per se* irreparable harm, then it has proven other irreparable harm because, as stated in the affidavit, "*there is a chance* that [the principal] will ultimately move into this Property with [his] family at the conclusion of the construction and use it as a family home."  ECF No. 9-1 ¶ 57 (emphasis added).

6

But because (1) this is not harm to the plaintiff, and (2) the principals are not parties to this suit, the plaintiff does not have standing to assert this harm. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that *the plaintiff* "suffer[ing] an injury in fact" is one of the elements for Article III standing); *Ezeamama v. In re Est. of Chibugo*, 390 So. 3d 189, 191 n.4 (Fla. 3d DCA 2024) ("[A]n LLC is an entity separate from its members[.]").

Moreover, even considering this harm, it is too speculative to be irreparable because there is only a *chance*—i.e. a *possibility*—that the principals will move into the home. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (emphasis added)); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (For harm to be irreparable, it "must be 'neither remote nor speculative, but actual and imminent.'" (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989))).

*The Harm at Issue is Not Irreparable*

The plaintiff also argues that it has proven irreparable harm because compensatory damages would be too difficult to quantify. But even if true, the alleged harm here still would not be irreparable.

As indicated in the complaint, the defendant's refusal to approve the amended plans, based on its interpretation of the municipal code, prevents the plaintiff from applying a non-slip epoxy to the concrete rooftop. *See* ECF No. 1 ¶ 28-34.

This does not constitute irreparable harm because, regardless of any alleged difficulty in quantifying compensatory damages, the epoxy could be applied at a later date—thereby providing

the plaintiff with an adequate remedy—if the plaintiff ultimately prevails. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285 ("The possibility that adequate compensatory or *other corrective relief will be available at a later date*, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (emphasis added) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974))).

## Conclusion

Therefore, it is **ORDERED AND ADJUDGED** that the plaintiff's expedited motion for preliminary injunction [ECF No. 8] is **DENIED**.

**ORDERED** in Chambers in West Palm Beach, Florida, this 12th day of January 2026.

*[signature: Ed Artau]*
_____
ED ARTAU
UNITED STATES DISTRICT JUDGE

Copies Served:

**Richard S Kozell, III**
Law Office of Rick Kozell
616 SE Dixie Hwy
Stuart, FL 349943049
772-287-3100
Email: rick@kozell-law.com

**Jeffrey Lawrence Hochman**
Johnson Anselmo Murdoch Burke Piper & Hochman, P.A.
International Building
2455 E Sunrise Boulevard
Suite 1000
Fort Lauderdale, FL 33304-0220
954-463-0100
Fax: 954-463-2444
Email: Hochman@jambg.com